734 A.2d 409 (1999)
D.H., Appellee,
v.
B.O.,[1] Appellant.
Superior Court of Pennsylvania.
Submitted March 8, 1999.
Filed June 15, 1999.
Jay W. Jenkins, Easton, for appellant.
Stanley J. Margle, III, Bethlehem, for appellee.
Before DEL SOLE, POPOVICH and BROSKY, JJ.
POPOVICH, J.:
¶ 1 This is an appeal from the protection from abuse ("PFA") order entered on May 29, 1998, by the Court of Common Pleas of Northampton County. Upon review, we reverse.
¶ 2 On May 26, 1998, appellee filed a PFA petition against appellant, his former lover, to prevent appellant from contacting him in any manner. A temporary PFA order was issued that day, and, after a *410 hearing held on May 29, 1998, the trial court entered a permanent PFA order against appellant, which enjoined him from any attempt to contact appellee for one (1) year.
¶ 3 Herein, appellant argues that the PFA order against him must be vacated because appellee failed 1) to establish the requisite relationship and 2) to allege an act of abuse that would warrant the relief granted pursuant to the PFA Act. See 23 Pa.C.S. §§ 6101-6117. Moreover, he contends that he was denied due process because he was not represented by counsel at the PFA hearing. We find that although appellee's testimony established the requisite relationship, the evidence was insufficient to support the trial court's finding of abuse. Accordingly, we vacate the order.
¶ 4 As a threshold matter, we must reject appellant's due process claim. The trial court held a hearing on this matter on May 29, 1998, "where appellant was entitled to present witnesses in his own defense and to cross-examine witnesses including appellee." See R.G. v. T.D., 448 Pa.Super. 525, 672 A.2d 341, 343 (1996) (citing Weir v. Weir, 428 Pa.Super. 515, 631 A.2d 650, 657 (1993)). His failure to retain counsel does not amount to a denial of due process. See R.G., supra. It was appellant's responsibility to secure counsel before the hearing, and he must now bear the consequences of his failure to do so. See id. Hence, this claim lacks merit.
¶ 5 Next, we turn to appellant's substantive challenges to the PFA order. Our task is to determine whether the evidence was sufficient to sustain a finding of abuse. See R.G., 672 A.2d at 342. In doing so, we view the evidence in the light most favorable to the petitioner and grant him the benefit of all reasonable inferences derived therefrom. See id. This court must defer to the trial court's determinations on the credibility of witnesses. See id.
A PFA order may be issued "to bring about a cessation of abuse of the plaintiff...." 23 Pa.C.S. § 6108. "Abuse" as defined by the statute in relevant part, is "the occurrence of one or more of the following acts between [sexual or] intimate partners:
(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury...."
23 Pa.C.S. § 6102(a)(5).
R.G., 672 A.2d at 342.
¶ 6 The record supports the trial court's finding that the parties were formerly "sexual or intimate partners," and its determination that appellee was therefore entitled to seek protection under the PFA statute. See R.G., 672 A.2d at 342; see also 23 Pa.C.S. § 6102(a). In the present case, the PFA petition the complainant filed referred to appellant as his former roommate and homosexual lover, and the complainant testified that he and appellant formerly had a sexual relationship, which lasted for approximately one and one-half months. This evidence was sufficient to demonstrate an intimate relationship. Hence, appellee's petition was properly before the trial court. See id.
¶ 7 Nonetheless, we find the evidence insufficient to justify the entry of a PFA order. The record reveals that appellee had left town to vacation in Florida and, when he returned, learned that appellant had left several "disturbing" messages at his place of employment. Appellee then telephoned appellant and terminated the relationship. Appellee testified that in an effort "to try and repair the relationship," appellant then contacted him via pager and telephone calls at his home and office. In total, appellant attempted communication with appellee at least thirteen times in the course of five days. In one of the pages, appellant stated, "I know what *411 you['re] doing with that pervert [, your co-worker]," and threatened, "I'm going to get him any way I can."[2] See Exhibit A, Appellant's Log of Phone Calls from Appellee, at 1. Appellee also testified that appellant "has threatened the life of [his] boss and he did say that he was going to come to the office and strangle [my boss], and that he would not be alone." See N.T., 5/29/98, at 10. On another occasion, appellant threatened to reveal to the proper authorities that appellee's company, which was in bankruptcy proceedings, expended funds to send its employees, appellee and [appellee's co-worker], on vacation. Appellee's testimony and a self-compiled telephone log were the only evidence presented at the hearing.[3]
¶ 8 Unfortunately, the complained of conduct does not amount to an "act of *412 abuse" under the Protection from Abuse Act. The only physical threats appellant made were directed towards appellee's co-worker. Appellant never threatened to cause physical injury to appellee. The one threat directed toward appellee was not a threat to cause physical harm but to expose potentially damaging financial information about appellee's employer. Furthermore, the other messages complained of relay no more than appellant's chagrin over unrequited love. This evidence is insufficient to support a finding that appellant engaged in a repeated course of conduct which would place appellee in reasonable fear of bodily injury. See 23 Pa.C.S. §§ 6102 and 6108. Accordingly, we reverse.
¶ 9 Order reversed. Jurisdiction relinquished.
NOTES
[1] To protect the privacy of persons who are not parties to the case sub judice but are discussed herein, this court has substituted the initials of the parties for their names.
[2] Apparently, appellant believed appellee and this co-worker began an intimate relationship shortly before appellee ended his relationship with appellant.
[3] According to appellee's telephone log, appellant telephoned appellee's home on May 25, 1998, at approximately 12:00 a.m. At that time, appellee requested that appellant stop contacting him. After that time, appellant left the following other messages on appellee's pager:

Date Time Message
5/24/98 6:44 p.m. [], I'm still trying to figure out what I ever meant to you? I just returned from
 Bangor PD [sic] and I'm not even about to tell you why I was there or what's going
 to happen but ...
5/24/98 6:44 p.m. I just knew you were going to change when you left with him, I JUST KNEW. Why
 did you waste my time, that's all I want to know? I did find your class ring, I was
 going to give it t [sic]
5/24/98 6:45 p.m. [], but that's childish. But your behavior and attitude has forced [sic] me to take
 actions I didn't want to do [sic]. I really hope someday you find what you want in
 life . . . good luck to you.
5/24/98 6:48 p.m. P.S. [Your co-worker] filed a false police report tonight with [O]fficer Straka.
 Neither myself, [O]fficer Straka nor Judge Frey find it amusing. It to [sic] will be
 dealt with on the July 7th hearing.
5/25/98 6:06 p.m. I have come to the conclusion that not only does life suck, but I don't belong in it.
 I just want you to understand that I did love you and all I ever wanted was the
 TRUTH.
5/25/98 6:06 p.m. I only wanted what was best for the both of us. I can see I must of [sic] been
 wrong, obviously you don't love me, were [sic] not together and I'm tired of this
 life, simply tired ... so I'm goi [sic]
5/25/98 6:06 p.m. Please understand, I did nothing but love you and want so bad to do what was
 right, whatever you do . . . NEVER FORGET ME. xo & 606 Peanut
5/25/98 10:37 p.m. Can you remember the first night we spoke on the phone. You are not the same
 person you were when I met you WHY? [sic] You were so excited about you and I.
 I truly love you [] when are [sic]
5/25/98 10:38 p.m. I still love you for who YOU are, what what [sic] you have or where you work. I
 fell in love with you because of your heart, right now your heart should be telling
 you, what your doing t [sic]
5/26/98 9:01 a.m. All I want to do is repair our relationship [], There is no reason why you and I can
 not just go on together without OUTSIDE interference's [sic]
5/26/98 9:01 a.m. Since you seem uninterested to even give it a chance and listen to reason, I must go
 out of town today for a meeting . . . Some of the questions I will be asking are like
 . . . how did a c [sic]
5/26/98 9:02 a.m. that filed ch. 13 manage to go out of service for a period of time and have its
 employees leave on such an expensive Florida Vacation. I think somebody would
 like to know that.