J-A12028-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| HELENE MANCUSO-FLANNERY, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL FLANNERY, | : | |
| | : | |
| Appellant | : | No. 1622 MDA 2014 |

Appeal from the Order entered September 12, 2014,
Court of Common Pleas, Lackawanna County,
Civil Division at No. 14-FC-40888

BEFORE: BOWES, DONOHUE and ALLEN, JJ.

MEMORANDUM BY DONOHUE, J.:           **FILED JUNE 23, 2015**

Daniel Flannery ("Husband") appeals from the entry of an order pursuant to the Protection from Abuse Act, 23 Pa.C.S.A. §§ 6101 et. seq. ("PFA Act"), prohibiting him and members of his family from all contact with Helene Mancuso-Flannery ("Wife") for a period of three years. Following our careful review, we reverse.

The parties married on May 20, 2008. On November 5, 2013, Wife told Husband that she was filing for divorce. That evening, while Wife was lying in bed working on a crossword puzzle, Husband entered the bedroom. He approached Wife, told her that because they were still married she had "wifely duties," and "began pulling on her underwear." Trial Court Opinion, 11/21/14, at 2. Wife "fought [Husband] off a little" and he left. N.T.,

9/12/14, at 5. The next day, Husband changed the locks on the doors of the martial residence and excluded Wife therefrom.

In the ensuing months, Wife began to receive notices that Husband was viewing her profile on the social media sites Facebook and LinkedIn. Wife blocked Husband from her Facebook profile but could not do the same with her LinkedIn account. She did not want to make her LinkedIn profile private, as it is a professional networking site and she felt that doing so would defeat the purpose of being on the site. Husband's repeating viewings of her profile perturbed Wife greatly. On June 23, 2013, Wife received an invitation from Husband to connect on LinkedIn. In response, Wife filed a PFA petition on June 30, 2013, alleging that "[Husband] continues to stalk me on social media … ."[1] **See** PFA Petition, 6/30/14. The trial court entered a temporary PFA order on the same day. Following two continuances, a hearing on Wife's petition occurred on September 12, 2014, at which time Wife mentioned the November 5, 2013 incident for the first time in connection with her PFA action. At the conclusion of the hearing, the trial court entered a final PFA order prohibiting Husband and his family from having any contact with Wife for three years.

Husband then filed this timely appeal. He presents two issues on appeal, both of which challenge the trial court's determination that Wife

_____

[1] Wife made no mention of the November 5, 2013 incident in her PFA petition.

presented sufficient evidence to support a finding of abuse as defined by the PFA Act. Husband's Brief at 1-2.[2] "Our standard of review for PFA orders is well settled. In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." **Boykai v. Young**, 83 A.3d 1043, 1045 (Pa. Super. 2014) (citation omitted).

"The [PFA Act] was created to protect the victims of domestic violence from their abusers. Its goal is not punishment of abusers for past violent behavior, but advance prevention of physical and sexual abuse." **Burke ex rel. Burke v. Bauman**, 814 A.2d 206, 208 (Pa. Super. 2002) (internal citations omitted). The PFA Act defines abuse, in relevant part, as follows:

> **"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> ***
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.
>
> ***

---

[2] In degradation of Rule of Appellate Procedure 2119(a), Husband did not address each issue individually in the argument portion of his brief. **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). While this Court is empowered to quash appeals due to briefing defects, in this instance the defect is not so great that it impedes our ability to effectively review the issues presented. We urge Husband's counsel to adhere to the Rule of Appellate Procedure in the future.

> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102(a). Both subsections (2) and (5) of § 6102 involve reasonable fear of bodily injury, albeit to different degrees: subsection (2) involves conduct that places a victim in reasonable fear of **imminent serious bodily injury**, while subsection (5) addresses **courses of conduct** that place the victim in reasonable fear of **bodily injury**.[3]

The trial court found that Husband committed abuse pursuant to subsections (2) and (5). *See* Trial Court Opinion, 11/21/14, at 4. The trial court's finding with regard to subsection (2) is apparently based upon the November 5, 2013 incident, as there was no other evidence that could conceivably support a finding that Wife was placed in "reasonable fear of imminent serious bodily injury" as required under subsection (2). In that regard, the trial court found that "[Husband] physically threatened [Wife] on the day she filed for divorce … . [Husband] threatened [Wife] with sexual

---

[3] The PFA does not contain definitions of serious bodily injury or bodily injury. However, we note that the Crimes Code defines serious bodily injury as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ," and bodily injury as "impairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301.

- 4 -

abuse by pulling on her underwear and stating to her that she still has "wifely duties." Trial Court Opinion, 11/21/14, at 4.

First, crucially, the trial court found only that Husband "physically threatened" Wife on the date in question; it did not find that he threatened Wife with imminent serious bodily harm, which, as noted, is required for a finding of abuse under subsection (2).[4] Furthermore, Wife testified that when this incident occurred she was "shocked and scared, threatened … [and] [she] just kind of fought him off a little, and then he just left the room." N.T., 9/12/14, at 5. Wife did not testify that at any point she feared imminent serious bodily injury. Moreover, there is no evidence that Husband had a history of physically abusing or threatening to harm Wife, which could give rise to a reasonable fear of imminent serious bodily injury.

---

[4] We acknowledge the trial court's statement that Husband "threatened [Wife] with sexual abuse by pulling on her underwear and stating to her that she still has 'wifely duties.'" Trial Court Opinion, 11/21/14, at 4. The trial court did not find that Husband's conduct violated subsection (1), which defines abuse as:

> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

As a result of the trial court's finding that Husband violated subsection (2) and not subsection (1), we must conclude that the trial court did not find that Husband's actions amounted to an attempted sexual assault or other sexual offense addressed in subsection (1), but rather concluded that it instilled a reasonable fear of serious imminent bodily injury, as required by subsection (2).

*See Snyder v. Snyder*, 629 A.2d 977, 983 (Pa. Super. 1993) (holding that husband's "increasingly bellicose behavior" could reasonably have placed wife in fear of imminent serious bodily harm). To the contrary, Wife testified that Husband never threatened her physically, prior to or after this incident.[5] *Id.* at 19-20. Thus, under the facts of this case, the evidence does not support a finding of abuse pursuant to subsection (2). *Cf. Raker v. Raker*, 847 A.2d 720, 726 (Pa. Super. 2004) (holding that evidence supported finding of reasonable fear of imminent serious bodily injury warranting entry of PFA order where wife testified that estranged husband entered her home at 2:00 a.m. carrying a knife and husband had previously threatened and physically assaulted wife); *Snyder*, 629 A.2d at 983.

The trial court also found abuse as defined by subsection (5) because Husband "repeatedly stalked [Wife] through social media by viewing her profile constantly." Trial Court Opinion, 11/21/14, at 2. It concluded that "[t]his cyber stalking, coupled with [Husband's] past history of violence towards [Wife]" (evidently referring to the incident of November 5, 2013), established sufficient evidence of abuse, and cites the *Burke* case in support of its conclusion.

---

[5] We note that this event occurred slightly more than eight months before Wife filed her PFA petition. *See* N.T., 9/12/14, at 20. We likewise note again that Wife did not allege the November 5, 2013 incident in her petition as a basis for the issuance of the PFA order.

The ***Burke*** case is readily distinguishable from the present case. The facts in ***Burke*** were as follows:

> Appellant filed a PFA petition against her former boyfriend, Jeffrey S. Bauman. She alleged the following. On August 23, 2001, Bauman called her to retrieve his clothes from her residence. In the course of this telephone call, the two discussed criminal charges that Bauman was facing for destroying Appellant's property. Bauman said: (1) "I'll get you back. You are going to burn for this"; (2) "These are promises, not threats"; and (3) "I will be thinking every day if I go to jail how I can't wait to get out and make you pay. I'm going to get someone to destroy you and the rest of your stuff." In prior incidents, Bauman was physically and mentally abusive toward Appellant and her minor children, including kicking holes in walls and doors, smashing her son's TV, having "fits of rage" against the children, pushing Appellant, and destroying her car and household property. On the same day, the court entered a temporary PFA order against Bauman.

***Burke***, 814 A.2d at 207. The trial court subsequently denied the request for a final PFA order, and the Appellant appealed. This Court reversed the trial court. We stated,

> In the instant case, the trial court articulated only one basis for its decision: namely, an apparent belief that telephone calls can never form the basis of a PFA order. We disagree. It is possible for a person to be placed in reasonable fear of imminent bodily injury based on telephone calls, particularly when coupled with the alleged abuser's past history of violence. ***See***[] ***D.H. v. B.O***., 734 A.2d 409, 412 (Pa. Super. 1999) (assuming that telephone calls may form the basis of a PFA, but reversing the PFA order because the alleged abuser did not make physical threats).

***Id.*** at 209.

- 7 -

The differences between the present case and **Burke** are stark. Of critical importance, the defendant in **Burke** had an extensive history of violence against the appellant and he made direct, specific, threats of violence against her in the complained-of course of conduct (the telephone calls). The combination of these two factors – a history of violence/abuse and articulated threats – supported a finding of abuse in that case. **Id.; see also R.G. v. T.D.**, 672 A.2d 341 (Pa. Super. 1996) (holding that threatening phone messages and emails, that escalated in hostility and included death threats, and defendant's refusal to cease contacting victim despite her requests that he do so, were sufficient to establish abuse for PFA order). In the present case, there is no history of Husband making threats of violence against Wife. The complained-of conduct consists only of viewing her public profile on LinkedIn and sending her a request to connect on that forum. Husband does not have a history of violent behavior against Wife, as was the case in **Burke** or **R.G.** The factual bases for those findings of abuse are not present in this case.

In support of his position, Husband draws our attention to **D.H. v. B.O.**, which this Court cited in **Burke**. In that case, the parties were roommates and sexual partners before the plaintiff traveled to Florida on a business trip.

> [W]hen [Appellee] returned, [he] learned that
> appellant had left several "disturbing" messages at
> his place of employment. Appellee then telephoned

appellant and terminated the relationship. Appellee testified that in an effort "to try and repair the relationship," appellant then contacted him via pager and telephone calls at his home and office. In total, appellant attempted communication with appellee at least thirteen times in the course of five days. In one of the pages, appellant stated, "I know what you ['re] doing with that pervert [, your co-worker]," and threatened, "I'm going to get him any way I can." **See** Exhibit A, Appellant's Log of Phone Calls from Appellee, at 1. Appellee also testified that appellant "has threatened the life of [his] boss and he did say that he was going to come to the office and strangle [my boss], and that he would not be alone." **See** N.T., 5/29/98, at 10. On another occasion, appellant threatened to reveal to the proper authorities that [A]ppellee's company, which was in bankruptcy proceedings, expended funds to send its employees, appellee and [appellee's co-worker], on vacation. Appellee's testimony and a self-compiled telephone log were the only evidence presented at the hearing.

Unfortunately, the complained of conduct does not amount to an "act of abuse" under the [PFA] Act. The only physical threats appellant made were directed towards appellee's co-worker. Appellant never threatened to cause physical injury to appellee. The one threat directed toward appellee was not a threat to cause physical harm but to expose potentially damaging financial information about appellee's employer. Furthermore, the other messages complained of relay no more than appellant's chagrin over unrequited love. This evidence is insufficient to support a finding that appellant engaged in a repeated course of conduct which would place appellee in reasonable fear of bodily injury.

**D.H.**, 734 A.2d at 410-12.

In this case, like **D.H.**, there is a pattern of contact, but an absolute and total absence of any threat of physical harm and no historical basis to

support a reasonable fear of bodily injury. Accordingly, the trial court abused its discretion in entering the PFA order, and so we reverse its order.[6] In so doing, we sympathize with Wife who was attempting to break all ties with Husband. However, the purpose of the PFA is not to shield one from annoyances, but to prevent physical and sexual abuse. **Burke**, 814 A.2d at 208. A PFA order was simply not a proper channel for relief.

Order reversed. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2015

---

[6] We note that Wife likens her case to **Mescanti v. Mescanti**, 956 A.2d 1017 (Pa. Super. 2008), in which this Court found a course of conduct sufficient to establish a reasonable fear of bodily harm. **See** Wife's Brief at 7. The course of conduct by the husband in **Mescanti** was significantly more sinister than the serial social profile views alleged in the present case. Specifically, the husband in **Mescanti** repeatedly locked wife out of home, prevented her from leaving home, deprived her of sleep, followed her when she went out with friends, and went to the basement following arguments with her and cocked his guns in a manner to ensure wife could hear. **Mescanti**, 956 A.2d at 1023-24. We are unpersuaded by Wife's attempt to analogize the facts of these cases.