J-S13035-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| ANNA MARIE NICOLE LYDIC, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN CASEY BERTOLINO, | : | |
| | : | |
| Appellant | : | No. 1327 WDA 2018 |

Appeal from the Order Entered August 15, 2018
in the Court of Common Pleas of Indiana County
Civil Division at No(s): 11040 CD 2018

BEFORE:  BENDER, P.J.E., OTT, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:                FILED MAY 21, 2019

Appellant, John Casey Bertolino, appeals from the order granting a final

Protection from Abuse (PFA) order pursuant to the PFA Act, 23 Pa.C.S.

§§ 6101-6122, in response to the petition filed by Anna Marie Nicole Lydic.

We affirm.

On June 25, 2018, Lydic filed pro se a PFA petition against Bertolino.  In

the petition, Lydic averred the following.   Lydic and Bertolino were in a

relationship until it ended in April 2017.  PFA Petition, 6/25/2018, at 2.  At

that time, she requested that Bertolino stop contacting her, but he did not

abide by her request, despite her not responding to any of his texts or emails.

Id.  Shortly before she filed the petition, on June 14, 2018, she received a

_____

* Retired Senior Judge assigned to the Superior Court.

text message from Bertolino's phone number stating, "If you weren't running around on me half the time you were with me sh*t would be peaceful." Id. (verbatim). Three days later, one entire side of Lydic's Jeep was scratched with a key. Id.

Lydic further averred that after she had blocked Bertolino's number, she started receiving text messages from a "fake number app," (i.e., mechanism to send a text message that appears to come from a different phone number so that the message does not reveal the identity of the sender to the recipient). Id. On June 20, 2018, three days after her Jeep was scratched with a key, she received a text message from the app stating, "Listen SL*T I don't want bothered by you! Shut your lips! The ones attached to your pitted face and the ones you spread often as you can between your legs! Keep running your mouth I'll permanently shut it for you. It's your only warning!" Id. (verbatim).

Regarding past incidents, Lydic averred that in February and May 2018, Bertolino had thrown sharp objects in her driveway, and during the 2017 hunting season, caltrops (i.e., sharp weapons) were thrown on her hunting property, resulting in three flat tires. Id. Finally, Lydic alleged that Bertolino "ran [her] off the road on Route 22 past Ebensburg, continued to message [her] and talk to [her] after being told to stop contacting [her], withheld [her] personal belongings, posted inappropriate pictures and words about [her] on the internet, threatened [her] verbally, emotionally, and physically, continued

to email her utilizing all means of email including [her] government [email address,] and threatened to show up at [her] work place and house unwelcome." Id.

Based upon Lydic's allegations, the trial court entered a temporary PFA order on behalf of Lydic against Bertolino. After several continuances, a final PFA hearing was held on August 15, 2018. Both parties appeared and were represented by counsel. Following the hearing, the trial court issued a final PFA order with a duration of nine months.

Bertolino timely filed a notice of appeal. Both Bertolino and the trial court complied with Pa.R.A.P. 1925.[1]

On appeal, Bertolino sets forth one issue for our review.

> Whether the evidence adduced during the PFA hearing was insufficient to warrant the entry of the final [PFA order] in this case because the evidence did not establish, by a preponderance of the evidence, that [Bertolino] engaged in conduct that placed [Lydic] in reasonable fear of imminent serious bodily injury nor did it establish that [] Bertolino engaged in a course of repeated conduct toward [Lydic,] which placed her in reasonable fear of bodily injury.

Bertolino's Brief at 4.

"Our standard of review for PFA orders is well settled. 'In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion.'" Boykai v. Young, 83 A.3d 1043, 1045 (Pa. Super.

---

[1] Lydic did not file a brief on appeal.

2014) (quoting Stamus v. Dutcavich, 938 A.2d 1098, 1100 (Pa. Super. 2007)).

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." Buchhalter v. Buchhalter, 959 A.2d 1260, 1262 (Pa. Super. 2008). "In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury…." Raker v. Raker, 847 A.2d 720, 725 (Pa. Super. 2004). "The intent of the alleged abuser is of no moment." Buchhalter, 959 A.2d at 1263.

"The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence." K.B. v. Tinsley, __ A.3d __, 2019 WL 1593892, at 3 (Pa. Super. 2019) (citation and brackets omitted). A "preponderance of the evidence standard is defined as the greater weight of the evidence, i.e., [enough] to tip a scale slightly." Raker, 847 A.2d at 724.

> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

K.B., supra, at 3.

- 4 -

In relevant part, the PFA Act defines abuse as the "occurrence of one or more of the following acts between ... sexual or intimate partners...:"

(2) Placing another in reasonable fear of imminent serious bodily injury.

\* \* \*

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. ...

23 Pa.C.S. § 6102(a)(2), (5).

During the hearing, Lydic described an incident on Route 22 "last fall or last winter" when Bertolino "was driving his Dodge Dually with his flatbed" and "a piece of equipment on the back" and she was driving her Jeep. Id. at 6. When she would attempt to pass Bertolino's Dually, Bertolino "would come over into [her] lane," causing her to be afraid to pass him or continue forward. Id. This continued from Ebensburg to the Bedford exit on Route 22, and caused Lydic to be afraid that Bertolino was attempting to cause her serious bodily injury. Id.

Regarding communications from Bertolino, Lydic emphasized that Bertolino continued to contact her, even though she does not respond to him and they had been separated for a year and one-half. Id. She testified that she believed "the means and measures" to which Bertolino went in order to contact her and the things he said were "extreme." N.T., 8/15/2018, at 5.

According to Lydic, every time Bertolino sent her an email, he sent it to her Hotmail, Gmail, and state employee email accounts. Id. at 5, 9.

More significantly, she testified that on June 14, 2018, Bertolino's car passed her on the street, and then she received a text from his cell phone number stating,[2] "if you weren't running around on me half the time you were with me, shit would be peaceful." Id. at 7, 17. Because her Jeep was "keyed" only days later, she believed that Bertolino was the one who keyed her car on June 17, 2018, and that he intended the June 14, 2018 text to be threatening to her.[3] Id. at 7.

According to Lydic, Bertolino has threatened to show up at her apartment and the state correctional institution where she works, which has caused her to be cautious when leaving work, to avoid her house and go to a local restaurant where her roommate works instead, and to call her parents to ensure someone was on the telephone with her while she travelled home.

---

[2] During his testimony, Bertolino admitted to sending this text. Id. at 20. He claimed he had reason to believe that Lydic had cheated on him during their relationship. Id. at 21.

[3] Lydic testified she also was concerned because someone had been throwing nails and caltrops, which she identified as miner jacks that had been welded together, both on her driveway and on the property where she hunts. Id. at 7-8. She suspected it was Bertolino because he knows she hunts there, but she conceded on cross-examination that although she and her family have filed police reports regarding the sharp objects, she does not know for sure who the perpetrator is. Id. at 15. She also began to testify to a series of text messages she received from a "fake number app," which she suspected Bertolino sent because he told her before that he uses such an app, but Bertolino objected on the basis that Lydic could not authenticate the texts from this app, and the trial court sustained the objection. Id. at 8-9.

Id. at 9-10. Lydic testified that her concern is that if Bertolino still continues to contact her after all of this time when she is not even responding, he must have "something against [her]," and a PFA order would make her feel safer. Id. at 10.

To support its decision to grant the PFA petition, the trial court emphasized its role in determining the credibility of the witnesses. Trial Court Opinion, 10/5/2018, at 4. It found "the incident involving the vehicles and the repeated emails and text messages" to be significant. Id. The trial court determined that Lydic had a reasonable fear of imminent serious bodily injury when Bertolino used his vehicle to block her right of way on Route 22. Id. at 5. It also found that Bertolino had engaged in a course of conduct that caused Lydic to have a reasonable fear of bodily injury that required her to change her daily habits to provide her a feeling of security. Id. Accordingly, it found Lydic to be the victim of abuse as it is defined in the PFA Act.

Bertolino argues that even under a preponderance of the evidence standard, Lydic did not prove that he engaged in conduct that placed her in reasonable fear of imminent serious bodily injury, and she did not prove that he knowingly engaged in a course of conduct or repeated acts towards her under circumstances placing her in reasonable fear of bodily injury. Bertolino's Brief at 22-23. In his view, they had a bad breakup and Lydic was merely annoyed by his unwanted communication, which is not a basis to grant

a PFA petition. Id. at 23 (citing D.H. v. B.O., 734 A.2d 409, 411-12 (Pa. Super. 1999)).

He emphasizes that despite Lydic's allegation that she received multiple emails and text messages from him, Lydic only presented or specifically described two during the hearing, and neither was threatening. Id. at 21. Bertolino contends, for example, that the lone text message that could be attributed to him merely related to his "disdain concerning [Lydic's] infidelity and his complaint that things [were not] peaceful between them" and did not convey any threats. Id.

In a similar vein, Bertolino claims the texts from the fake number app Lydic complained about could not be attributed to him. Specifically, he contends that despite sustaining his objection that it would be speculative to attribute those text messages to him, the trial court now relies upon such evidence in its Rule 1925(a) opinion. Id. Bertolino also posits that Lydic was unable to prove that he was the one who "keyed" her Jeep, threw nails on her driveway, and placed caltrops on the hunting property, yet such evidence was used against him. Id. at 19.

Further, Bertolino disputes the trial court's characterization of the incident on Route 22; Bertolino claims the record does not support the trial court's finding that he tried to run Lydic off the road. Id. at 20. According to Bertolino, Lydic's testimony was incredible and should not have been credited

by the trial court. Id. He also argues that the incident was too remote in time to have placed Lydic in imminent fear of serious bodily harm. Id.

Regarding the Route 22 incident, Bertolino's argument that Lydic's testimony was not credible goes nowhere. As an appellate court, "we defer to the trial court's credibility determinations, and we are not entitled to re-weigh the evidence." K.B., supra, at 3. Thus, the trial court was within its discretion to credit Lydic's testimony over Bertolino's. Lydic's testimony established that she had a reasonable fear of imminent serious bodily injury by Bertolino's repeated intrusions into her lane with his large vehicle and trailer.

Furthermore, even assuming arguendo that the Route 22 incident was too remote in time to constitute an "imminent" fear of serious bodily harm to warrant the entry of a current PFA order pursuant to subsection 6102(a)(2) many months later, it is not the only incident in the record.[4] This Court has stated that "[p]ast abusive conduct on the [defendant's] part [is] a crucial inquiry necessary for entry of a proper order." Custer v. Cochran, 933 A.2d 1050, 1059 n.11 (Pa. Super. 2007) (en banc) (citing Raker, 847 A.2d at 726). Because the goal of the PFA Act is to prevent physical and sexual abuse, a victim does not have to wait for physical or sexual abuse to occur for the PFA Act to apply, and past acts are relevant to determine the reasonableness of

_____

[4] Because this was not the only incident, we need not determine whether this incident in late 2017 in of itself would be sufficient to grant a PFA petition filed in May 2018.

- 9 -

the petitioner's current fear. K.B., supra, at 3; Miller ex rel. Walker v. Walker, 665 A.2d 1252, 1259 (Pa. Super. 1995) (holding that "in light of the protective purposes of the [PFA Act], it was within the trial court's discretion to hear any relevant evidence that would assist it in its obligation to assess the appellee's entitlement to and need for a [PFA] order," including evidence of abuse occurring six years prior).

We do not find the case cited by Bertolino, D.H., to be akin to the instant case. In D.H., there were no threats of physical harm to the petitioner, only threats to expose potentially damaging financial information about the petitioner's employer, and repeated messages relaying "no more than [the] appellant's threat over unrequited love." D.H., 734 A.2d at 411-12. Here, the June 14, 2018 text message Bertolino admitted to sending about the lack of peacefulness because of Lydic's alleged infidelity, and the multiple attempts to contact Lydic in multiple ways, reasonably seemed less innocuous to Lydic when colored by the earlier Route 22 incident.[5] See Mescanti v. Mescanti, 956 A.2d 1017, 1023-24 (Pa. Super. 2008) ("Considered as a whole, [the wife's] testimony of [the husband's] indirect threats ... when coupled with her testimony that on prior occasions he would cock his guns within her earshot,

___

[5] The trial court was not specific as to which emails and texts it considered. Even if the trial court improperly considered testimony to which it had sustained an objection, there is sufficient evidence in the record without considering that testimony, and we may affirm on any basis. See Commonwealth v. Cramer, 195 A.3d 594, 607 n.5 (Pa. Super. 2018) ("We are not limited by the trial court's rationale and may affirm its decision on any basis.").

established 'abuse' under [sub]section 6102(a)(5) by a preponderance of the evidence.").

The proximity of the keying of her Jeep to the June 14, 2018 text Bertolino admittedly sent to Lydic points circumstantially to Bertolino as the culprit, which then calls into question whether Bertolino also threw the nails and caltrops onto Lydic's property. But even if Bertolino did not do these things, it was not unreasonable for Lydic to have viewed Bertolino's text stating that things cannot be "peaceful" because she had cheated on him as a threat. His subjective intent in sending the text is of no moment. See Buchhalter, 959 A.2d at 1263. Additionally, Lydic testified that Bertolino had warned her that he may show up at her home and workplace, causing her to change her habits. Considered as a whole, see Mescanti, 956 A.2d at 1023-24, and when viewed in the light most favorable to Lydic, see K.B., supra at 3, Lydic's testimony about these incidents and communications establish by a preponderance of the evidence that Bertolino engaged in a course of conduct and/or committed repeated acts sufficient to establish abuse pursuant to subsection 6102(a)(5). Accordingly, we discern no error of law or abuse of discretion in the trial court's entry of the PFA order in favor of Lydic and against Bertolino, and we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/21/2019