J-S15045-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| H.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| F.M. | : | |
| | : | |
| Appellant | : | No. 1794 WDA 2019 |

Appeal from the Order Entered November 6, 2019
in the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD 18-07155-002

BEFORE:   BENDER, P.J.E., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                FILED APRIL 21, 2020

Appellant, F.M. ("Father"), files this appeal from the Final Protection From Abuse ("PFA") Order dated and entered November 6, 2019, in the Allegheny County Court of Common Pleas, granting H.H. ("Mother") and their child, L.H. ("Child"), protection from Father for a period of two years, and including a temporary custody provision, pending conciliation.  After review, we affirm the trial court's order.

A PFA Petition and Temporary Order on behalf of Mother and Child, and against Father, dated October 15, 2019, was filed on October 16, 2019. Subsequently, the court held a hearing with respect to a Final PFA Order on November 6, 2019.  Both Mother and Father were present and represented by counsel.  Each testified on their own behalf.

_____

[*] Former Justice specially assigned to the Superior Court.

The trial court recounted,

The parties began a relationship in October of 2016. The [p]arties both testified to a strained relationship. The parties first separated while [Mother] was pregnant with their only minor child together, L.H. L.H. was born in [August of 2017]. However, after L.H. was born, and after a DNA test that confirmed [Father] is L.H.'s father, the parties, albeit unsuccessfully, attempted to reconcile. The first testimonial evidence about an instance of abuse, chronologically, occurred when [Mother] stated on direct examination that in December of 2016, [Father] told [Mother] that he wanted to punch her in the face and "got in [her] face" at a bar. [Mother] further testified about [Father]'s anger issues, that he is destructive and threatens to hit [Mother]. [Mother] also testified that [Father] drinks alcohol every day and this has been an issue in the parties' relationship. The parties ceased their intimate relationship sometime in July of 2019.

Multiple exhibits containing text messages between the parties were entered, without objection, into evidence throughout the hearing. Therein, on July 29, 2019, [Father] made the following threat, which is but one of multiple threats communicated to [Mother]: "You're a f'ing piece of bad f'ing shit and you will pay motherf'er. I mean f'ing pay." Earlier that month, on July 18, 2019, [Father] also texted [Mother]: "Stop me from seeing my son and his grandparents. You f'ers will pay."

[Father] backed his threatening texts and statements with a course of cowardly conduct which placed [Mother] in reasonable fear of bodily injury and in some instances, the conduct extended directly to L.H. On July 18, 2019, [Father] broke into [Mother]'s house while she was at work and her place was "just destroyed." [Mother] adamantly and credibly testified that she never gave [Father] a key and that he did not have permission to be there. [Father] claimed that [Mother] told him in a text message that he could come to her home to get his stuff but did not produce the text message. [Mother] also testified that [Father] admitted to stealing a part out of her air-conditioner at

her home, and then apologized for doing it and came back to fix it.[1]

On Friday, October 11, 2019, [Mother] was scheduled to transfer L.H. to [Father] at the South Fayette Township Police Station. Because of an odd and incomplete text message sent on "Our Family Wizard" earlier in that day, [Mother] was concerned that [Father] was already intoxicated and as such inquired as to same. [Father] did not respond. [Mother] then credibly testified that she was worried about giving her son to [Father] when he is intoxicated, as she was fearful that he would drive intoxicated with her son in the car. [Mother] testified that [Father] had a history of drinking on Friday nights after work. [Mother] ultimately did not exchange the minor child on Friday, October 11 because she was fearful for his safety.

The very next day, on October 12, 2019, [Mother] discovered that one of her tires was slashed and that another tire and the surrounding wheel-well on her vehicle was doused in gasoline. [Mother] testified that after changing the flat tire, she attempted to drive the vehicle. [Mother]'s testimony was clear that gasoline "was all doused in there so when you turned the heat on, like the vent, it filled the entire vehicle with fumes." L.H., who was also in the car, became ill from the gas fumes leaked into the vehicle.

[Father] was evasive and incredible when responding to questions about his awareness of [Mother] transporting L.H. in [Mother]'s car. [Father] testified that he went to "Seven Springs" from 8:00 P.M. Friday October 11, 2019 and stayed through Saturday October 12. [Father] was not able to produce any documentation or receipts to support this assertion. Nor did [Father] produce any witnesses to corroborate his alibi. The [c]ourt found [Father]'s testimony regarding his whereabouts during this time period to be especially incredible.

[Mother] agreed when prompted on cross-examination that [Father]'s responsibility for the events surrounding the tire was "speculative." However, the [c]ourt concluded that [Mother] lacked an appreciation for the word "speculative" in a legal sense.

_____

[1] Mother additionally testified to discovering in early August 2019 that someone cut the propane line to the gas grill on her patio, near where Child plays. See Notes of Testimony ("N.T."), 11/6/19, at 14-17, 21, 38-41; see also Plaintiff's Exhibits D and E.

The [c]ourt found [Mother]'s testimony regarding [Father]'s threats, rage, timing of events, access of her home and vehicle to be compelling. Her belief and conclusion that [Father] was acting on his threats were sincere and credible.

In reaching a decision, the [c]ourt had ample opportunity to observe the demeanor of the parties, review written exhibits, and measure the credibility and veracity of both parties. The [c]ourt determined that [Father]'s actions and threatening statements placed [Mother] and minor child in reasonable fear of bodily injury. During the hearing on this matter, [Father]'s rage was palpable and concerning to the [c]ourt.

Trial Court Opinion ("T.C.O."), 1/17/20, at 1-6 (citation to record omitted).

At the conclusion of the hearing, the trial court entered a Final PFA Order against Father on behalf of Mother and Child for a period of two years, stating,

The [c]ourt has heard considerable testimony today regarding [Mother]'s [p]etition for a final protection from abuse order. The [c[ourt concludes that the evidence establishes that abuse has occurred primarily with respect to placing [Mother] in reasonable fear of imminent serious bodily injury in the text messages that were submitted to the [c]ourt, namely[,] that you will pay[,] and messages of the like. The [c]ourt notes that this was in the context of a dispute[,] however[,] the nature of the communications stemming from [Father], in particular, leads the [c]ourt to conclude that [Mother] was in reasonable fear of imminent serious bodily injury.

In addition, the [c]ourt concludes that [Father] did enter [Mother]'s home without proper permission and that also contributed to placing her in reasonable fear of bodily injury pursuant to 23 [Pa.C.S.] Section 6102.5.

With respect to the minor child, there was circumstantial evidence, and the [c]ourt notes that this is not a beyond a reasonable doubt standard that we are dealing with, the [c]ourt is not convinced that the incident on the grill was performed by [Father,] but[,] given the exchanges between [Mother] and [Father], and the [c]ourt did not find the alibi of [Father] convincing with respect to where he was on October 11th through the 12th, the [c]ourt concludes that [Father] did, indeed, puncture

the tire despite the lack of -- despite the reliance on circumstantial evidence and that the gasoline was also placed there.

Given that this placed the child in potential danger, the [c]ourt will extend the two-year PFA also to the child[,] but the [c]ourt would like [Father] to work towards a different custodial schedule over time. We'll start with supervised visits. I'm going to refer [Father] to anger management. I also note that nothing in my decision is based on past history of anger management history with respect to [Father]. This is recent conduct on behalf of [Father].

So[,] the [c]ourt has entered an order granting a two-year PFA. We're going to go off the record and see how we can facilitate the supervised custody. I've also already scheduled a judicial conciliation for the end of January[,] so we will be back here at the end of January.

N.T., 11/6/19, at 112-114. The court entered a written order on the same date memorializing a Final PFA Order against Father on behalf of Mother and Child, and including a temporary custody provision of supervised custody for Father, pending conciliation.

Thereafter, Father, through counsel, filed a timely notice of appeal on December 6, 2019, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father raises the following issues for our review:

I.      Whether the trial court erred by awarding a Protection From Abuse order protecting Mother and the parties' child under circumstances in which she failed to meet her burden[?]

II.     Whether the trial court erred by making determinations of material fact in a capricious manner and/or that were either unsupported, insufficiently-supported or contradicted by the record[?]

III.    Whether the trial court erred by adopting at trial an improper presumption in favor of Mother and against Father,

thereby improperly shifting all or a material portion of the burden of proof from Mother to Father[?]

IV.   Whether the trial court erred by including the parties' child as a protected person in its order[?]

V.    Whether the trial court erred by superseding its own prior child custody order, entered by the agreement of the parties, without sufficient basis for doing so[?]

Father's Brief at 10 (unnecessary capitalization omitted).

Initially, we note our standard of review.

> "In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." Boykai v. Young, 83 A.3d 1043, 1045 (Pa.Super. 2014) (citation and internal quotation marks omitted). "The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." Buchhalter v. Buchhalter, 959 A.2d 1260, 1262 (Pa.Super. 2008) (citations omitted).

K.B. v. Tinsley, 208 A.3d 123, 127 (Pa.Super. 2019); see also C.H.L. v. W.D.L., 214 A.3d 1272, 1276 (Pa.Super. 2019); Custer v. Cochran, 933 A.2d 1050, 1053-1054 (Pa.Super. 2007) (en banc).

We turn, first, to Father's issues one through three, which we view together as a challenge to the sufficiency of the evidence and burden of proof. Our standard and scope of review regarding claims as to sufficiency of the evidence is well-settled.

> When a claim is presented on appeal that the evidence is not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's

conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it. A preponderance of the evidence is defined as "the greater weight of the evidence, i.e., to tip a scale slightly is the criteria or requirement for preponderance of the evidence."

Thompson v. Thompson, 963 A.2d 474, 477 (Pa.Super. 2008) (citations omitted); see also D.H. v. B.O., 734 A.2d 409, 410 (Pa.Super. 1999); see also Fonner v. Fonner, 731 A.2d 160, 161 (Pa.Super. 1999). The Act does not seek to determine criminal culpability, and therefore, the petitioner is not required to establish abuse occurred beyond a reasonable doubt; but rather, as indicated supra, the abuse must be established by a preponderance of the evidence. See Snyder v. Snyder, 629 A.2d 977, 981 (Pa.Super. 1993).

> Furthermore, we must defer to credibility determinations of the trial court. Finally, we note that a PFA petitioner is not required to file a police report, nor is it necessary for her to introduce medical evidence of an injury. The petitioner's testimony is sufficient if it is believed by the trial court.

Custer, 933 A.2d at 1058 (citations omitted).

> Pursuant to 23 Pa.C.S. § 6102(a), "abuse" is defined as:
>
> The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.

(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a).

In finding the evidence supported a finding of abuse under the Protection from Abuse Act and that the court used the appropriate burden of proof, the trial court reasoned,

> In the instant case, the credible testimony of [Mother] about [Father]'s statements and actions, as well as the text messages and documentary evidence of the condition of her home and her vehicle[,] sufficiently evidence a finding of abuse under 23 Pa.C.S. § 6102.

> Moreover, [Mother]'s fear for her physical safety and the safety of the minor child was reasonable under the circumstances. The evidence presented at this hearing evidenced the [c]ourt by a preponderance of the evidence that [Father] berated and threatened [Mother], broke into her home, and sabotaged the vehicle that she uses to transport their minor child. [Mother] credibly testified that these activities make her "fear for my safety and my son." The [c]ourt believes that her fear is reasonable. The tone of [Father]'s testimony grew increasingly hostile throughout the hearing and his rage and struggle with anger were obvious to this [c]ourt. Although [Father] did not make an explicit communication that he was going to injure her, his statements like "you will pay motherf'er. I mean f'ing pay[,]" coupled with his actions[,] most certainly conveyed a threat sufficient to call [Mother]'s fear of bodily injury reasonable.

- 8 -

With specific regard to [Father]'s third assignment of error, the [c]ourt applied the appropriate standard and burden of proof as outlined above, and the record is clear that [Mother] met that burden.

T.C.O. at 7-8 (citations to record omitted).

Father, however, argues that, as suggested by Mother's testimony, as well as her statements and actions of record, his text messages did not represent threats of physical harm or cause reasonable fear of imminent bodily harm. Father's Brief at 27-35. Father states that Mother

offered no testimony as to the nature of the threat she perceived, nor testimony or evidence that any or all of these messages placed her in fear of imminent serious bodily injury, reasonable or otherwise. To the contrary, Mother agreed on the record that Father's texts did not place her in fear of imminent bodily injury. . . ."

Id. at 28-29 (emphasis in original). Rather, Father posits, Mother agreed that the exchange captured by the text messages was an argument between Father and her, where both were forceful and she did not express fear. Id. at 29-30. He continues, "Given that the record contains no testimony or other evidence that Father ever committed a single act of violence against Mother, whatever understanding Mother may have had of Father's statements that she would 'pay,' it is plain that she did not interpret them as a threat of physical violence." Id. at 30 (emphasis in original).

Moreover, highlighting that Mother did not raise his text messages, despite opportunity, until two and one-half months later, upon filing the instant protection from abuse filings, Father maintains that Mother's own

actions and statements of record suggest that his texts did not constitute threats of harm or place her in reasonable fear of harm. Id. at 31-35.

Father further asserts that the evidence does not support that his entry into Mother's home to retrieve his belongings, in conjunction with his text messages, placed Mother in reasonable fear of bodily injury. Id. at 35-39. He argues that Mother agreed that she and Father discussed that he needed to remove his belongings from her home, and that he only removed his belongings. Id. at 37. He continues, "When Father informs Mother that he has a key, she does not dispute him but instead demands its return. She does not display any fear; to the contrary, she angrily threatens Father that she will leave any of his remaining property at the curb for garbage collection. She says nothing about the condition of her home following his departure." Id. at 38. Father, therefore, states,

> Father's entry into the home in which he had been living, made when [Mother] was not home and for the express and mutually-desired purpose of recovering his personal property, and to which Mother responded with anger and threat but no evident fear, does not contribute [a] basis for the [t]rial [c]ourt's finding that Father's texts may now be considered part of 'a course of conduct or repeatedly committing act[s]' that place Mother in reasonable fear of bodily injury for purposes of finding abuse under 23 Pa.C.S. § 6102(a)(5).

Id. at 39.

Additionally, as to burden of proof, Father argues that the trial court's determination that he vandalized Mother's car, despite Mother's lack of direct knowledge and proof, was error in that it shifted the burden from Mother to Father and created a presumption against Father. Id. at 41-44. He maintains,

> In making this determination, the [t]rial [c]ourt effectively conjured a baseless presumption against Father which shifted the burden of proof from Mother's shoulders to Father's, and thereafter found against him for his failure to rebut that novel presumption with sufficient evidence. This is clearly demonstrated in the [t]rial [c]ourt's expression of disfavor toward Father's failure to produce documentation of a witness to corroborate his "alibi," without any corresponding disfavor (or even mention) of Mother's own failure either to supply documentation, or to call a corroborating witness, in support of her allegations against Father. The [t]rial [c]ourt thereby has misapplied Pennsylvania law, which requires that PFA plaintiffs "must prove the allegation of abuse by a preponderance of the evidence."

Id. at 43-44.

Moreover, Father asserts that the trial court's use of "collateral evidence" and/or "circumstantial evidence" rejects the statements and actions of Mother and reflects an animus against Father and a desired outcome. Id. at 46-47. Father states, "Particularly in light of the [t]rial [c]ourt's impermissible shift of the burden of proof from Mother to Father. . ., it is clear that the 'circumstantial evidence' cited by the [t]rial [c]ourt is less the product of reasonable extrapolation, than it arises from a desire to achieve a particular outcome irrespective of the record." Id. at 47. He similarly claims that the trial court's credibility determinations were entered "in blatant disregard of the evidence." Id. at 49.

For the reasons stated by the trial court, Father's challenge to the sufficiency of the evidence and burden of proof is without merit. The record supports the court's finding of abuse and entry of a final PFA order. We discern no abuse of discretion and do not disturb the trial court's determination.

Next, as to Father's fourth and fifth issues as to the inclusion of Child and the custody provision, the trial court stated,

The Protection From Abuse Act (23 Pa.C.S. § 6101 [et seq.]) (the "Act") is clear and unambiguous in its delineation of whom may petition the court for a Protection From Abuse Order on behalf of a minor child. That is, the Act states that "any parent, adult household member or guardian ad litem[.]" 23 Pa.C.S. § 6106(a).

In the instant case, [Mother] is the mother of the minor child, L.H. As such, [Mother] acted in accordance with Section 6106(a) when she brought forth her petition on behalf of herself and on behalf of L.H. Moreover, and for the reasons outlined more thoroughly above, this [c]ourt was convinced that both [Mother] and minor child were at risk of further abuse from [Father].

The Act further provides that this [c]ourt "may grant any protection order or approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor children." 23 [Pa.C.S.] § 6108(a). Section 6108(a)(4) specifies that this order may include "Awarding temporary custody of or establishing temporary visitation rights with regard to minor children."

In the Final Protection from Abuse Order that is the subject of this appeal, the [c]ourt expressly stated that the custody provisions contained therein are temporary, and that either party may initiate custody proceedings pursuant to the custody [s]tatute at 23 [Pa.C.S. § 5321 et seq.]. In the Order, the [c]ourt also referred [Father] to anger management therapy and scheduled a judicial conciliation regarding custody for January 30, 2019. The Order expressly states that "Father/Defendant's progress will be reviewed at that time." Accordingly, [Father] has ample opportunity for restoration of his partial physical custody time should he address his threatening and aggressive conduct.

The Superior Court has concluded that a "PFA court need not conduct a best interests custody analysis to award temporary custody as [a] form of relief under section 6108 of the Protection from Abuse Act." [C.H.L., 214 A.3d at 1281]. In [C.H.L. v. W.D.L.], this Court went on to clarify that "the PFA Act does not require a child to be physically struck before a court can award temporary sole custody to a plaintiff. The court may do so even though the defendant has inflicted serious abuse upon the plaintiff

alone." [Id.] at 1282. [See also] 6108(a)(4)(iii)(8). In the present case, the [c]ourt concluded that [Father] directed his abuse to both [Mother] and minor child, L.H., requiring protection.

Based on [Mother]'s credible testimony regarding [Father]'s actions towards [Mother], as well as the evidence entered at this hearing, this [c]ourt found [Mother]'s fear of bodily injury to both herself and minor child to be reasonable.

Accordingly, this [c]ourt's November 6, 2019 Order, granting [Mother]'s request for a Final Protection from Abuse Order behalf of herself and minor child, L.H., for a period of two (2) years against [Father] should be affirmed.

T.C.O. at 8-10.

Based upon circumstantial evidence, as discussed above, Father argues that the trial court's inclusion of Child as a protected party was without evidentiary basis and contrary to law. Father's Brief at 50-51. Father also asserts that the trial court impermissibly superseded the existing custody order without notice and an opportunity to be heard after full preparation, without any apparent emergency or change in circumstances, without any explanation as to why it was in Child's best interest. Id. at 51-52.

23 Pa.C.S. § 6106(a) provides:

General rule.--An adult or an emancipated minor may seek relief under this chapter for that person or any parent, adult household member or guardian ad litem may seek relief under this chapter on behalf of minor children. . .by filing a petition with the court alleging abuse by the defendant.

23 Pa.C.S. § 6106(a).

Further, as to relief, 23 Pa.C.S. § 6108(a) states:

General rule.--Subject to subsection (a.1), the court may grant any protection order or approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor children. The order may include:

- 13 -

. . .

(4) Awarding temporary custody of or establishing temporary visitation rights with regard to minor children. In determining whether to award temporary custody or establish temporary visitation rights pursuant to this paragraph, the court shall consider any risk posed by the defendant to the children as well as risk to the plaintiff. The following shall apply:

(i) A defendant shall not be granted custody, partial custody or unsupervised visitation where it is alleged in the petition, and the court finds after a hearing under this chapter, that the defendant:

(A) abused the minor children of the parties or poses a risk of abuse toward the minor children of the parties;

. . .

(ii) Where the court finds after a hearing under this chapter that the defendant has inflicted abuse upon the plaintiff or a child, the court may require supervised custodial access by a third party. The third party must agree to be accountable to the court for supervision and execute ab affidavit of accountability.

(iii) Where the court finds after a hearing under this chapter that the defendant has inflicted serious abuse upon the plaintiff or a child or poses a risk of abuse toward the plaintiff or a child, the court may:

(A) award supervised visitation in a secure visitation facility; or

(B) deny the defendant custodial access to a child.

. . .

23 Pa.C.S. § 6108(a).

Moreover, as we stated in C.H.L.,

. . .[W]e conclude that a PFA court need not conduct a best interests custody analysis to award temporary custody as a form of relief under section 6108 of the Protection From Abuse Act.

The purpose of the Protection From Abuse Act is to protect victims of domestic violence from the perpetrators of that type of abuse and to prevent domestic violence from occurring. It is well settled that trial courts have the authority to enter protection from abuse orders that conflict with custody orders. The PFA Act allows the court to award temporary custody or establish temporary visitation rights with regard to minor children. Where the court finds after a hearing that the defendant has inflicted serious abuse, the court may deny the defendant custodial access to a child. In order to prevent further abuse during periods of access to the plaintiff and child during the exercise of custodial rights, the court shall consider, and may impose on a pre-existing custody award, conditions necessary to assure the safety of the plaintiff and minor children from abuse.

Custody[-]wise a PFA order is not designed to impose anything but emergency relief. . . .But while the domestic violence emergency is still pending a PFA order may alter a pre-existing custody order and remand for clarification to avoid conflict. "To hold otherwise would have the effect of emasculating the central and extraordinary feature of the PFA which is to prospectively control and prevent domestic violence."

C.H.L., 214 A.3d at 1281-82 (internal citations omitted) (emphasis in original).

Instantly, again, Father's claims are without merit. As Child's mother, Mother was entitled to seek relief on his behalf. Further, the trial court had the authority to supersede the existing custody order and impose a temporary custody provision in order to protect Mother and Child from abuse.

- 15 -

For the foregoing reasons, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2020