J-A14036-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                      : PENNSYLVANIA
                                      :
              v.                        :
                                      :
                                      :
JUSTIN JOSEPH RICHARDS         :
                                      :
            Appellant           :     No. 1606 WDA 2019

Appeal from the Judgment of Sentence Entered May 13, 2019
in the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0002037-2017

BEFORE: SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          FILED SEPTEMBER 10, 2020

Justin Joseph Richards ("Richards") appeals from the judgment of sentence[1] imposed following his convictions of strangulation and simple assault.[2] We affirm.

On July 4, 2017, at approximately 3:00 a.m., Richards called E.C. and asked her to come over to his house. E.C. arrived at Richards's house at about 4:00 a.m. Richards and E.C. went to Richards's bedroom, which was located in the basement, watched Netflix and engaged in consensual sex.

After some time, E.C. began to feel pain during intercourse and asked Richards to stop. Richards stopped, but after a few minutes, attempted to re-

_____

[1] We note that Richards's sentence was executed on May 9, 2019, but not entered on the docket until May 13, 2019. The caption has been corrected to reflect the date the order was docketed.

[2] 18 Pa.C.S.A. §§ 2718(a)(1), 2701(a)(1).

initiate intercourse, at which time E.C. rebuffed his attempts. Richards became irate and pinned E.C. down, onto the bed. Richards attempted to insert his penis into E.C.'s vagina; however, his attempts were unsuccessful due to their respective positioning. E.C. again asked Richards to stop, but instead, he inserted his penis into her anus.

E.C. began to scream, but Richards covered her mouth with his hand and muffled her screams. E.C. responded by biting Richards's finger, which caused Richards to withdraw his hand from E.C.'s mouth. In response, Richards punched E.C. in the back of the head several times. E.C. continued screaming until Richards grabbed E.C.'s necklace in the back and pulled it, muffling her screams again. At some point, Richards also had his hand around her throat. E.C. testified that she was unable to breathe, or cry out, and may have lost consciousness.

E.C. next remembered waking up and gathering her things to leave. At approximately 5:30 a.m., E.C. drove home and showered. On the same day, between the hours of 8:00 and 9:00 a.m., E.C. drove to the McDonald Police Department where she detailed the events to Police Chief Dennis Ahlborn ("Chief Ahlborn"). After her interview, E.C. went directly to Washington Hospital, where hospital staff performed a rape kit.

Dr. Shawna Gelormino ("Dr. Gelormino"), an emergency room physician at Washington Hospital, examined E.C.'s physical injuries. Dr. Gelormino observed that E.C. had suffered bilateral subconjunctival hemorrhages, which

are broken blood vessels in the white parts of the eye and show the appearance of blood surrounding the iris and pupil. Dr. Gelormino noted that this type of injury can occur from strangulation. Additionally, Dr. Gelormino diagnosed E.C. as having a petechial hemorrhage, which was described as the "next step" in the progression from a subconjunctival hemorrhage. The petechial hemorrhage appeared as multiple little red dots that looked like blood in the white parts of the eye. Dr. Gelormino explained that a petechial hemorrhage can be caused by a more prolonged and severe strangulation. Further, Dr. Gelormino observed linear marks of erythema and signs of ecchymosis around E.C.'s neck. Dr. Gelormino explained that these types of bruises would require significant force, and are consistent with E.C.'s description of the strangulation.

Linda Yelenik ("Yelenik"), a Sexual Assault Nurse Examiner, performed physical and sexual assault examinations of E.C. These consisted of transcribing E.C.'s version of events, taking photographs, and observing and documenting any injuries. Yelenik observed the same injuries as Dr. Gelormino. Additionally, Yelenik collected buccal, vaginal, and rectal swabs.

The swabs collected by Yelenik were sent to the Pennsylvania State Police Regional Laboratory, where they were tested. Jillian Scola ("Scola"), a forensic scientist from the Pennsylvania State Police, conducted DNA analyses on the vaginal and rectal swabs. Scola compared the swabs to the DNA samples provided by E.C. and Richards. On the vaginal swab, Scola identified

a mixture of two different individuals, which indicated that E.C. and Richards could not be excluded as contributors. On the rectal swab, Scola was again able to identify DNA from two individuals, but the swab was insufficient to determine if the DNA from the second individual matched Richards.

On October 10, 2017, the Commonwealth charged Richards with the above-mentioned offenses, as well as with rape, involuntary deviant sexual intercourse, and sexual assault.[3] After several continuances, Richards proceeded to a jury trial on February 14, 2019.

Following the jury trial, Richards was found guilty of strangulation and simple assault, and not guilty of the remaining offenses. The trial court deferred sentencing in order for a pre-sentence investigation report ("PSI") to be prepared.

On May 9, 2019,[4] Richards was sentenced to 20 to 48 months in prison for the strangulation conviction. For the simple assault conviction, Richards was sentenced to 4 to 24 months in prison. The trial court directed Richards's sentences to run consecutively, resulting in an aggregate term of 24 to 72 months in prison, plus fines and costs. Additionally, Richards was ordered to pay $1,448.00 into the Victim Compensation Assistance Program.

_____

[3] 18 Pa.C.S.A. §§ 3121(a)(1), 3123(a)(1), 3124.1.

[4] The sentencing Order was not docketed until May 13, 2019.

On May 16, 2019,[5] Richards filed a Post-Sentence Motion. On June 27, 2019, Richards filed an Amended Post-Sentence Motion challenging the sufficiency and the weight of the evidence supporting his convictions. Further, Richards asserted that his sentence was unduly harsh and requested a hearing. The hearing was held on August 12, 2019.[6] On October 22, 2019, the trial court denied Richards's post-sentence Motions. The trial court issued an Amended Sentencing Order on October 24, 2019, which corrected a clerical error in the original document.

Richards filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.[7] The trial court

_____

[5] In its Opinion, the trial court indicates that Richards timely filed an initial Post-Sentence Motion on May 16, 2019. See Trial Court Opinion, 12/11/19, at 5. We note that this Motion does not appear in the record, nor on the docket. However, the trial court's Order scheduling a hearing based upon the Motion is both in the record and on the docket. Indeed, as noted infra, it appears that despite this defect, the trial court was able to aptly address Richards's Post-Sentence Motion claims, despite the absence of these filings. Therefore, we decline to find Richards's claims waived.

[6] The transcript of this proceeding is not included in the record.

[7] In its Opinion, the trial court indicates that Richards timely filed his Concise Statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). See Trial Court Opinion, 12/11/19, at 17. The docket also reflects its timely filing. However, the Concise Statement was not made part of the record on appeal, and Richards has not attached a copy of it to his appellate brief. See Pa.R.A.P. 2111(d) (requiring the appellant to attach a copy of his Pa.R.A.P. 1925(b) concise statement as an appendix to the appellate brief). Despite this defect, we decline to find Richards's issues waived on this ground because the trial court was able to review the Concise Statement and ably address each claim.

filed a responsive Pa.R.A.P. 1925(a) Opinion.

Richards now presents the following issues for our review:

1. Was there sufficient evidence to convict [Richards] of [s]trangulation and [s]imple [a]ssault, where the Commonwealth presented no credible evidence corroborating [E.C.]'s version of events?

2. Was the verdict of guilty against the weight of the evidence as to the charge [sic] of [s]trangulation and [s]imple [a]ssault, where the jury found that [E.C.] was a family/household member but also found that the strangulation was not a result of sexual violence?

3. Did the [t]rial [c]ourt abuse its discretion when it sentenced [Richards] in the aggravated range for both the charge [sic] of [s]trangulation and [s]imple [a]ssault and ran the sentences at both counts consecutively?

Brief for Appellant at 10.

In his first claim, Richards argues that the Commonwealth failed to present sufficient evidence to sustain the convictions of strangulation and simple assault. Id. at 25. Initially, Richards asserts that the Commonwealth failed to present evidence corroborating E.C.'s claims that she was strangled by Richards and that Richards punched E.C. in the head. Id. Regarding the strangulation conviction, Richards acknowledges E.C.'s testimony that she was strangled by Richards. Id. at 26. However, Richards contends that the injuries on E.C.'s neck "could have" been caused by "anything [that] affect[s] blood flow[,] … which can include severe coughing." Id. Further, Richards asserts that the Commonwealth failed to prove that E.C.'s injuries were caused by strangulation. Id.

- 6 -

Regarding the simple assault conviction, Richards acknowledges E.C.'s testimony that she was punched in the head several times by Richards. Id. However, Richards contends that the Commonwealth failed to provide evidence that E.C. received treatment for the punches to the back of her head. Id. Further, Richards contends that a conviction of summary harassment, rather than simple assault, would have been more appropriate. Id.

When considering a challenge to the sufficiency of the evidence, we determine

> whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder[,] unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, or part or none of the evidence.

Commonwealth v. Melvin, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

The Crimes Code provides that "[a] person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another by: (1) applying pressure to the throat

or neck; or (2) blocking the nose and mouth of the person." 18 Pa.C.S.A. § 2718(a). Additionally, "[i]nfliction of a physical injury to a victim shall not be an element of the offense." Id. § 2718(b).

The Crimes Code provides that "[a] person is guilty of assault if he: (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." Id. 2701(a)(1); see also Commonwealth v. Martuscelli, 54 A.3d 940, 948-49 (Pa. Super. 2012) (stating that "it is sufficient to support a conviction [of simple assault] if the Commonwealth establishes an attempt to inflict bodily injury[,]" and that such attempt may be shown by circumstances reasonably suggesting that a defendant intended to cause injury). "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301.

In its Opinion, the trial court addressed Richards's sufficiency claims as follows:

> Upon review of the testimony and evidence presented at trial, th[e trial court] finds that the Commonwealth has provided sufficient evidence to sustain [Richards]'s conviction[s] and has established each material element of the offenses beyond a reasonable doubt. In regard to the charge of [s]trangulation, [E.C.], testified that [Richards] positioned his body behind her, grabbed the chain of her necklace, and then "twisted [the necklace] in the back and started pulling on it and also had his left hand around [her] throat in the front." [E.C.] explicitly testified that she could not breathe at that time. Indeed, [E.C.] [testified that she] "was scratching at the wall, the basement wall, just crying and was banging on it to try and let [Richards] know that [she] could not breathe." Accordingly, [E.C.]'s testimony alone establishes that [Richards] is guilty of [s]trangulation, for [Richards] knowingly or intentionally impeded [E.C.]'s breathing by applying pressure to her throat and neck.

- 8 -

Moreover, although the victim need not lose consciousness or sustain physical injuries to prove [s]trangulation, [E.C.] experienced both. [E.C.] testified that after [Richards] strangled her with her necklace, she "passed out." ... Second, the Commonwealth provided a plethora of evidence regarding [E.C.]'s physical injuries she suffered due to [Richards] strangling her. [The] Commonwealth's Exhibits 1-4 illustrated the bruising on [E.C.]'s neck that resulted from [Richards] strangling her with the necklace[].

Furthermore, the Commonwealth presented testimony from Dr. Gelormino, who went into great detail regarding the severity of [E.C.]'s physical injuries; namely that [E.C.] suffered bilateral subconjunctival hemorrhages, a petechial hemorrhage, and "linear marks of erythema from reported choking" around her neck. Not only did Dr. Gelormino opine that all of [E.C.]'s injuries could occur from strangulation, but [also] that "petechial hemorrhages [would result] from a more prolonged or more severe strangulation-type injury" and that linear marks of erythema, commonly known as developing bruising, "would require significant force, and it [was] consistent with [E.C.'s] description[.]" Ultimately, Dr. Gelormino's expert opinion was that [E.C.]'s aforementioned injuries were [] caused by strangulation.

The Commonwealth also introduced a number of photographs that were taken while [E.C.] was at [Washington Hospital]. These photographs included troublesome illustrations of [E.C.]'s injuries, such as her blood[-]filled eyes, the blood[-]filled dots surrounding her eyes, and the developing bruising around her neck. Later, [] Yelenik corroborated both [E.C.'s] and Dr. Gelormino's testimony, [when she] indicat[ed] that she also observed [E.C.]'s physical injuries. Accordingly, th[e trial c]ourt finds that the Commonwealth has sustained its burden and that all of the material elements of [s]trangulation have been proven beyond a reasonable doubt.

Regarding the charge of [s]imple [a]ssault, the testimony and evidence presented at trial clearly and unequivocally indicates that [Richards] is guilty. In addition to [Richards] strangling [E.C.], and [E.C.] suffering significant injuries therefrom, [E.C.] also stated that [Richards] punched her in the back of the head "about three or four times." ... Furthermore, as was previously

stated, [E.C.] suffered numerous bodily injuries from [Richards], after [Richards] grabbed her neck and twisted the chain of her necklace[,] she lost consciousness. Accordingly, th[e trial c]ourt finds that the Commonwealth has presented sufficient evidence to sustain [Richards]'s conviction for [s]imple [a]ssault.

See Trial Court Opinion, 12/11/19, at 19-21 (citations omitted).

We agree with and adopt the trial court's well-reasoned and thorough Opinion. See id. Moreover, to the extent that Richards contends that the Commonwealth failed to prove that E.C. suffered actual injury, his argument is without merit for the reasons stated by the trial court. See id. Additionally, even if the Commonwealth's evidence did not establish actual injury, it certainly established an attempt to cause injury, where Richards punched E.C. several times in the back of the head. See Martuscelli, supra; see also Commonwealth v. Richardson, 636 A.2d 1195, 1196 (Pa. Super 1994) (stating that the Commonwealth had demonstrated an attempt to cause bodily injury where the defendant had punched a police officer in the face, even though the officer received no medical treatment). Thus, to the extent that Richards contends that the Commonwealth failed to prove that E.C. suffered an actual injury, his argument is without merit.

In his second claim, Richards argues that his convictions of simple assault and strangulation were against the weight of the evidence, "where the jury found that [E.C.] was a family/household member but also found that the

strangulation was not a result of sexual violence."[8]  Brief for Appellant at 26-27.  Richards asserts that if the jury believed E.C.'s testimony, the jury would also have believed that the strangulation was a result of sexual violence.  Id. at 27.  Additionally, Richards argues, the convictions of simple assault and strangulation are intertwined because the Criminal Information states that "[Richards] did strangle [E.C.], causing [E.C.] to suffer extensive bruising and/or petechial hemorrhages...."  Id.  Richards contends that E.C.'s testimony cannot be believed because the bruising on her neck was not consistent with her testimony.  Id. at 28.

Here, Richards fails to develop his claim with citations to the record or relevant legal authority.  See Pa.R.A.P. 2119(a); see also Commonwealth v. Johnson, 985 A.2d 915, 924 (Pa. 2009) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority[,] or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").  It is not the role of this Court to "formulate [an a]ppellant's arguments for him."  Id. at 925.  Richards makes bald claims that his convictions of simple assault and strangulation are intertwined and are, thus, against the weight of the evidence, without citing

_____

[8] Richards bases this claim on his interpretation of 18 Pa.C.S.A. § 2718(d)(2), which provides that a violation of the statute constitutes a second-degree felony if committed "against a family or household member as defined in 23 Pa.C.S.A. § 6102 (relating to definitions)[.]"  As we will discuss infra, [E.C.] met the statutory definition of "family or household member."

to any statutes or case law supporting his argument. Additionally, Richards baldly asserts that the jury could not have found E.C. to be a family or household member, but includes no development or discussion in relation to his claim. To the extent that Richards includes photographs in his brief and places phrases in quotation marks, he does not direct this Court to the place in the record where these photographs or phrases may be found. Indeed, none of the photographs in Richards's brief were included in the record before this Court. Because Richards fails to adequately develop his second issue for review, Richards's challenges to the weight of the evidence are waived. See Johnson, supra.

Moreover, to the extent that Richards challenges the jury's finding that E.C. was a family/household member, such a claim lacks merit. The strangulation statute provides, in relevant part, as follows:

§ 2718. Strangulation

* * *

(d) Grading.

* * *

(2) A violation of this section shall constitute a felony of the second degree if committed:

(i) against a family or household member as defined in 23 Pa.C.S.[A.] § 6102 (relating to definitions)[.]

18 Pa.C.S.A. § 2718(d)(2)(i). According to 23 Pa.C.S.A. § 6102(a), "[f]amily or household members" are defined as "[s]pouses or persons who have been

spouses, persons living as spouses or who lived as spouses, parents and children, other persons related by consanguinity or affinity, current or former sexual or intimate partners or persons who share biological parenthood." 23 Pa.C.S.A. § 6102(a) (emphasis added); see also Evans v. Braun, 12 A.3d 395, 399 (Pa. Super. 2010) (stating that parties who were involved in a "dating relationship" fall within Section 6102's definition of a family or household member).

At trial, both E.C. and Richards testified that they were, at many times previous, intimate partners and were "on and off sexually." See N.T. (Jury Trial), 2/14/19, at 25, 211; see also D.H. v. B.O., 734 A.2d 409, 410 (Pa. Super. 1999) (stating that parties who were in month-long sexual relationship fell within 23 Pa.C.S.A. § 6102(a) definition of a family or household member). Accordingly, even if Richards's challenges to the weight of the evidence were not waived, we would afford him no relief.

In his final claim, Richards contends that the trial court abused its discretion when it sentenced him in the aggravated range for each offense and directed his sentences to run consecutively. Brief for Appellant at 33-34.

Richards challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. See Commonwealth v. Sunealitis, 153 A.3d 414, 420 (Pa. Super. 2016). Rather, when an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. Commonwealth v.

Yanoff, 690 A.2d 260, 267 (Pa. Super. 1997); see also Commonwealth v. Tuladziecki, 522 A.2d 17, 18 (Pa. 1987). Prior to reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

> * * *

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advance[s] a colorable argument that the sentencing judge's actions were either: (1) inconsistent with the specific provisions of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process

Commonwealth v. Moury, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

Here, Richards timely filed a Notice of Appeal, raised his discretionary aspects of sentencing claim in his Post-Sentence Motion, and properly included a 2119(f) Statement in his brief. Therefore, we will determine whether there is a substantial question requiring us to review the discretionary aspects of his sentence.

In his Rule 2119(f) Statement, Richards argues that the trial court abused its discretion imposing consecutive, aggravated-range sentences. See Brief for Appellant at 33-34. Richards claims that the trial court impermissibly

considered the gravity of the offense, where it was "already considered in the Pennsylvania Sentencing Guidelines … and cannot be considered twice." Id. at 30. Additionally, Richards asserts that the trial court ran his sentences consecutively for the sole purpose of incarcerating him for a longer period of time. Id. at 31. Richards further takes issue with the trial court's characterization of the incident as a "brutal assault," and claims that this characterization is incorrect because there was "no corroborating evidence," and "the Commonwealth did not charge [Richards] with aggravated assault." Id. at 31-32. Finally, Richards contends that the trial court improperly admonished him for failing to take responsibility for the crimes.[9] Id. at 32. In support of this final point, Richards asserts that people are wrongfully convicted every day, and that it is impermissible for a trial court to admonish a defendant's failure to take responsibility where the defendant never admitted to committing the crimes. Id.

A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. Commonwealth v. Mastromarino, 2 A.3d 581, 587 (Pa. Super. 2010). Rather, the imposition of consecutive rather than concurrent sentences will

---

[9] With regard to his contention that the sentencing court relied on an impermissible factor at sentencing, Richards cites Commonwealth v. Bowen, 975 A.2d 1120 (Pa. Super. 2009), for the proposition that a "trial court's admonishment emphasizing defendant's failure to acknowledge responsibility for crimes he never admitted to committing at sentencing was improper." Brief for Appellant at 38.

present a substantial question in only "the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." Commonwealth v. Lamonda, 52 A.3d 365, 372 (Pa. Super. 2012).

> To make it clear, a defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

Commonwealth v. Dodge, 77 A.3d 1263, 1270 (Pa. Super. 2013) (emphasis omitted).

With respect to Richards's contentions that the trial court relied upon an impermissible factor, i.e., his purported failure to take responsibility, in imposing an unreasonable sentence, we conclude that he has raised a substantial question for our review. See Commonwealth v. Downing, 990 A.2d 788, 792-93 (Pa. Super. 2010) (claims that the sentencing court relied on an improper factor in imposing sentence can raise a substantial question). Additionally, Richards's claim that the trial court impermissibly "double-counted" the gravity of the offense when it sentenced him also raises a substantial question. See Commonwealth v. Goggins, 748 A.2d 721, 727 (Pa. Super. 2000) (stating that a claim that the sentencing judge double-counted factors included in the sentencing guidelines raises a substantial question). Thus, we will review the merits of Richards's claim.

We adhere to the following standard of review:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Commonwealth v. Robinson, 931 A.2d 15, 26 (Pa. Super. 2007) (citation omitted).

"In every case in which the court imposes a sentence for a felony ... the court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reasons or reasons for the sentence imposed." 42 Pa.C.S.A. § 9721(b); see also Commonwealth v. Mouzon, 812 A.2d 617, 620-21 (Pa. 2002) (plurality). The Sentencing Code also provides that "the [trial] court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b); see also Commonwealth v. McClendon, 589 A.2d 706, 713 (Pa. Super. 1991) (stating that "the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation."). "A sentencing court may consider any legal factor in determining that a sentence in the aggravated range should be imposed. ... [T]he sentencing judge's statement of reasons

on the record must reflect this consideration....” Commonwealth v. Stewart, 867 A.2d 589, 592-93 (Pa. Super. 2005) (citation omitted). Further, the trial court must consider the Sentencing Guidelines. Commonwealth v. Sheller, 961 A.2d 167, 190 (Pa. Super. 2008).

Here, importantly, the trial court did not justify its sentencing scheme based solely, or even primarily, on Richards's lack of remorse or failure to take responsibility for his crimes. At the sentencing hearing, the trial court placed the following reasons on the record:

> There are several factors the [c]ourt must consider before imposing [a] sentence. Among those factors are the need to protect society; the need for deterrence; the particular circumstances of the offense; the [d]efendant's character; and whether the defendant is remorseful.
>
> The [c]ourt is aware of the individualized sentencing schemes in Pennsylvania, and the [S]entencing [G]uidelines, which take into account [Richards]'s prior record score and the offense gravity score assigned to each crime.
>
> * * *
>
> In imposing [this] sentence, the [c]ourt is taking into consideration the Pennsylvania [S]entencing [G]uidelines; the thorough [PSI]; the victim impact statement given by [E.C.]; the character references given by Eric Miller, Martha Loutes, Debbie Fronaro, Melissa Brandt, Dianna Conn, Renee Bird, Nancy Veltham, Charles Robinson[,] and Carol Nation; the rehabilitative needs of [Richards]; and the particular circumstances and gravity of the offense.
>
> After carefully weighing all [of] these factors, the [c]ourt concludes that a sentence of total confinement is appropriate, and any lesser sentence would depreciate the seriousness of these offenses.
>
> * * *

The [c]ourt notes for the record that this sentence is in the aggravated range of the [S]entencing [G]uidelines, and there are several reasons the [c]ourt has sentenced [Richards] in the aggravated range.

At trial, this [c]ourt had the opportunity to hear from both the emergency room physician and the emergency room nurse, who examined [E.C.] hours after this assault occurred, and they detailed her injuries. Also at trial, the [c]ourt viewed numerous photos vividly depicting the extent of [E.C.]'s injuries, and her injuries were quite extensive. This was clearly a brutal assault perpetrated upon [E.C.], and [she] is lucky to have survived.

As expressed in her victim impact statement, [E.C.] has suffered greatly as a result of this assault. She's suffered both physically and mentally. And while the physical scars heal over time, the emotional scars may last a lifetime.

Finally, [Richards] does not appear to be remorseful for his conduct and has not taken any responsibility for his actions.

N.T. (Sentencing Hearing), 5/9/19, at 22-24, 25-26.

Our review confirms that the trial court considered all the relevant sentencing factors and set forth its reasons for imposing aggravated-sentences. See 42 Pa.C.S.A. § 9721(b). Therefore, we cannot conclude that the trial court's sentence was based solely upon the trial court's statement that Richards did not appear to take responsibility for his crimes or demonstrate remorse. Indeed, in his brief, Richards acknowledges that the trial court considered several other factors in fashioning his sentence, including, but not limited to, the victim impact statement, and the offense gravity scores of the respective offenses. Brief for Appellant at 33-34, 36-39.

To the extent that Richards relies on Bowen, we note that in Bowen, this Court declined to vacate the sentence based on the trial court's actions. Bowen, 975 A.2d at 1127. Rather, this Court opined that significant other facts were present and articulated by the trial court in justifying its sentence. Id.; see also Commonwealth v. P.L.S., 894 A.2d 120, 133 (Pa. Super. 2006) (stating that even if the trial court considered an inappropriate factor at sentencing, "the court offered significant other support for sentencing in excess of the guidelines[.]").

Further, regarding Richards's contention that the trial court improperly considered the gravity of the offense, the transcript from the sentencing hearing does not support Richards's contentions. See N.T. (Sentencing Hearing), 5/9/19, at 22-24, 25-26. Our review of the record indicates that the trial court complied with the requirements of 42 Pa.C.S.A. § 9721(b) when it imposed Richards's sentence. See id.; see also 42 Pa.C.S.A. § 9721(b); Commonwealth v. Griffin, 804 A.2d 1, 10 (Pa. Super. 2002) (stating that "a court is required to consider the particular circumstances of the offense and the character of the defendant.").

Moreover, the trial court had the benefit of a PSI, which the trial court expressly stated it had considered. N.T. (Sentencing Hearing), 5/9/19, at 23; Trial Court Opinion, 12/11/19, at 29; Commonwealth v. Devers, 546 A.2d 12, 18 (Pa. 1988) (explaining that where a sentencing judge considered the PSI, it is presumed that they are "aware of relevant information regarding the

defendant's character and weighed those considerations along with mitigating statutory factors."). Therefore, we conclude that the trial court did not abuse its discretion in imposing Richards's sentence and that Richards's challenge to the discretionary aspects of his sentence is without merit. Based upon the foregoing, we discern no abuse of the trial court's discretion in imposing Richards's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/10/2020